**IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **ERICA MARS** | § | |
| | § | |
| **V.** | § | **No.  5:04CV245** |
| | § | |
| **ARVEL SHEPARD, TITUS COUNTY** | § | |
| **SHERIFF** | § | |

## ORDER

Before the Court is Defendant Sheriff Arvel Shepard's Motion for Summary Judgment (Dkt. No. 24).[1]  The Court, having reviewed the motion, the response, and the reply, is of the opinion Defendant's motion for summary judgment should be **GRANTED** and Plaintiff's above-entitled and numbered cause of action should be **DISMISSED WITH PREJUDICE.**

## I.

## FACTUAL BACKGROUND

Erica Mars ("Plaintiff") initiated this lawsuit against Arvel Shepard, Titus County Sheriff ("Defendant"), alleging Defendant violated Plaintiff's clearly established constitutional right of free speech and political association under the First Amendment of the United States Constitution. Specifically, Plaintiff alleges she was terminated in retaliation for comments made at work regarding the upcoming sheriff's election and regarding certain actions Defendant would take if he were reelected.  Plaintiff alleges she was terminated on January 14, 2004 after Defendant heard Plaintiff had made a comment that Defendant "was supposedly going to fire a higher-up and some female personnel" based upon a rumor she had heard from her husband in the context of what might happen if Defendant was reelected.

---

[1] The previous referral of this matter to the Honorable Caroline M. Craven for the purposes of preparing a report and recommendation is vacated.

Defendant asserts Plaintiff's claim fails for a number of reasons.  First, Defendant states Plaintiff fails to establish that her alleged speech, which Defendant saw as spreading a vicious rumor, was a matter of public concern based on its context, content, and form. Therefore, it was not protected speech under the First Amendment.  Second, Defendant maintains his interest in managing his department outweighs Plaintiff's interest in spreading rumors that "high ups" were going to get fired.  Third, Defendant asserts he is entitled to qualified immunity in his individual capacity.  For these reasons, Defendant contends he is entitled to summary judgment as a matter of law.

## II.

## PROCEDURAL BACKGROUND

On May 20, 2005, Defendant filed his current motion for summary judgment.  After briefing on Defendant's motion was completed, on June 28, 2005, Plaintiff filed a motion for leave to file an amended complaint.  Plaintiff sought leave to amend her complaint to clarify her claims to include a specific reference to her protected speech which is the subject of her claim under the First Amendment to the United States Constitution.  Defendant opposed Plaintiff's request, asserting the request was untimely and all the briefing on Defendant's motion for summary judgment had been filed.  In the alternative, Defendant requested the ability to supplement his motion for summary judgment.

On July 13, 2005, Magistrate Judge Craven granted Plaintiff's motion for leave to amend and allowed Defendant the opportunity to respond to the amendment by supplementing his motion for summary judgment.  On July 15, 2005, the Court received Defendant's Notice of No Additional Briefing.  Defendant's motion for summary judgment is ripe for consideration.

### III.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits and other evidence available to the Court establish that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). The movant bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Topalian v. Ehrman,* 954 F.2d 1125 (5th Cir.1992), *cert. denied,* 113 S.Ct. 82 (1992).

In a usual case, the nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley,* 992 F.2d 540 (5th Cir.1993). Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). It is not enough for the party opposing summary judgment to rest on mere conclusory allegations or denials in his pleadings. *Topalian,* 954 F.2d at 1131. The nonmovant must point out, with factual specificity, evidence demonstrating the existence of a genuine issue of material fact on every component of the nonmovant's case. *Dunn v. State Farm & Casualty Co.,* 927 F.2d 869, 872 (5th Cir.1991). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265

(1986).  In assessing the proof, the court views the evidence in the light most favorable to the nonmovant.  *Matshusita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV.

### DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

A review of Defendant's summary judgment evidence reveals the following.[2]  Plaintiff Erica Mars was hired by the Titus County Sheriff's Department in November of 2000 as a dispatcher. (Def. Ex. 1 at pg. 31, lines 5-11)(Def. Exs. 3-6 at ¶ 2).  At the time of her discharge on January 15, 2004, Plaintiff was the communications supervisor and supervised approximately four people.  (Def. Ex. 1 at pg. 37, lines 7-10; pg. 38, line 25 - pg. 39, line 15)(Def. Exs. 3-6 at ¶ 2)(Def. Exs. 8-10). At the time of her discharge, Defendant Sheriff Arvel Shepard, the Titus County Sheriff, was running for reelection and had an opponent, Chris Miller (a former Titus County Deputy).  Both Defendant and Mr. Miller were running as Democrats.  (Def. Exs. 3-6 at ¶ 3).

Plaintiff admits that prior to her discharge she did absolutely nothing to support Mr. Miller's candidacy for Titus County Sheriff. (Def. Ex. 1 at pg. 40, lines 15-18).  She also admits that even after her discharge she did nothing to support Mr. Miller's candidacy.  (*Id.* at pg. 40, lines 23-25). Furthermore, Plaintiff admits that even after her discharge she did not in fact support Mr. Miller in his bid for Sheriff.  (*Id.* at pg. 41, lines 1-3).  If anyone, Plaintiff admits she was behind Defendant.

---

[2] Defendant attached the following to his motion for summary judgment: (1) Exhibit 1 - Excerpts from Plaintiff's Deposition; (2) Exhibit 2 - Excerpts from Defendant's Deposition; (3) Exhibit 3 - Affidavit of Defendant; (4) Exhibit 4 - Affidavit of Chief Miguel Larsen; (5) Exhibit 5 - Affidavit of Susan Yokel; (6) Exhibit 6 - Affidavit of Sgt. David Chamness; (7) Exhibit 7 - Titus County Policy on Political Activity (TC0136); (8) Exhibit 8 - January 15, 2004 Memo to Plaintiff re: discharge (TC0036); (9) Exhibit 9 - F-5 Report of Separation of License Holder (TC0001); and (10) Exhibit 10 - January 3, 2003 Memo re: Plaintiff's promotion (TC0070).

(*Id.* at pgs. 45, line 21 - pg. 46, line 4).

Plaintiff is registered to vote in Franklin County and has been since she was 18 years old. She has never registered to vote in Titus County. (*Id.* at pg. 36, lines 8-21).  She did not vote in the Titus County Sheriff's election. (*Id.*).  Plaintiff did not even live in Titus County.  (*Id.* at pg. 61, lines 5-7).

Plaintiff admits that she told co-workers that she was going to remain neutral in the Sheriff's election.  (*Id.* at pg. 40, lines 19-22).  Plaintiff admitted that at the time of her discharge, she had indicated to Defendant she was behind him (or at least neutral in the election).  (*Id.* at pg. 57, lines 11-14). Plaintiff admits that she never told any co-workers that she was supporting Miller. (*Id.* at pg. 61, lines 1-4)(Def. Ex. 4 at ¶ 7)(Def. Ex. 5 at ¶ 7).  According to Sgt. David Chamness, Plaintiff told him she was remaining neutral in the election.  (Def. Ex. 6 at ¶ 4).

Information was presented to Defendant that Plaintiff told two employees, David Chamness and Susan Yokel, that Defendant was going to fire Chief Deputy Miguel Larsen and others high up in the Department. (Def. Ex. 2 at pg. 14, lines 8-25)(Def. Exs. 3-4 at ¶ 4)(Def. Ex. 5 at ¶¶ 5-6)(Def. Ex. 6 at ¶¶ 6-7).  If they did not say Chief Larsen, it was clear to Defendant that was who she was talking about.  (Def. Ex. 2 at pg. 16, lines 2-11)(Def. Ex. 3 at ¶ 4)(Def. Ex. 5 at ¶ 6)(Def. Ex. 6 at ¶¶ 6-7).  Defendant was not told the rumors about the firing(s) were made in the context of the reelection or were anyhow based on the outcome of the election, and the election was never mentioned in the context of the comments that were attributed to Plaintiff.   (Def. Ex. 2 at pg. 16, lines 17-25 & pg. 17, lines 21-24)(Def. Ex. 3 at ¶ 4).  The comment, which Defendant saw as spreading malicious rumors, was the reason she was discharged.  (Def. Ex. 2 at pg. 19, lines 13-16)(Def. Exs. 3-4 at ¶ 4)(Def. Ex. 5 at ¶ 6)(Def. Ex. 6 at ¶ 5).  "That kind of talk disrupts an office," and Defendant believed it did, as indicated by the fact that an employee had come to him worried

about Plaintiff's comments. (Def. Ex. 3 at ¶ 4)(Def. Ex. 2 at pg. 24, lines 8-16).  Ms. Yokel and

Chamness were concerned because the comments were disruptive to the office and were hurting

morale.  (Def. Ex. 5 at ¶ 6)(Def. Ex. 6 at ¶ 6).

The facts leading to Plaintiff's discharge are as follows.  On the morning of January 15, 2004,

Lt. Susan Yokel (then the Records Clerk) went to Sgt. David Chamness and indicated that Plaintiff,

in a very loud voice in the dispatch office, told her Defendant was firing someone "high up."  (Def.

Ex. 3 at ¶ 5)(Def. Ex. 5 at ¶¶ 5-6)(Def. Ex. 6 at ¶ 6).  Plaintiff had also, on several previous

occasions, indicated the same information to Sgt. Chamness, insinuating the someone was Chief

Larsen.  (*Id.*).

Sgt. Chamness went to Defendant to inform him of the situation.  (Def. Ex. 3 at ¶ 6)(Def. Ex.

5 at ¶¶ 5-6)(Def. Ex. 6 at ¶¶ 7-8).  Sgt. Chamness was concerned because the comments were

disruptive to the office and were hurting morale.  (Def. Exs. 3 & 5 at ¶ 6)(Def. Ex. 6 at ¶ 8).  He

wanted Defendant to reassure Chief Larsen he was doing a good job and was not going to be fired.

(Def. Ex. 3 at ¶ 6)(Def. Ex. 6 at ¶ 7).  Defendant wanted to confirm with Ms. Yokel what was said.

She was called into his office and reiterated the content of her conversation with Plaintiff.  (Def. Exs.

3 & 5 at ¶ 6)(Def. Ex. 6 at ¶ 7).  Ms. Yokel told Defendant that Plaintiff said that he was planning

on getting rid of several of the top people at the Department.  (*Id.*).  From Plaintiff's statements, Ms.

Yokel told Defendant she understood that to mean Chief Larsen was being fired.  (*Id.*).  Ms. Yokel

asked Plaintiff where she had heard that information, and Plaintiff said "the courthouse." According

to Ms. Yokel, Plaintiff made the statements with a very convincing tone, like it was really true, not

simply a rumor.  (*Id.*).

After Ms. Yokel reiterated Plaintiff's statements to her, Defendant brought Chief Larsen and

Plaintiff into his office.  (Def. Ex. 3 at ¶ 7)(Def. Ex. 4 at ¶5).  Defendant asked Plaintiff about the comments and from where they had come.  Plaintiff did not deny that she made the statement and did not respond to Defendant when asked who told her or why she spread the rumor.  (Def. Ex. 2 at pg. 19, lines 1-10)(Def. Ex. 3 at ¶ 7)(Def. Ex. 4 at ¶ 5).  At the end of their conversation, Defendant indicated to Plaintiff that she was discharged.  (Def. Ex. 3 at ¶ 7)(Def. Ex. 4 at ¶ 5).

Plaintiff admits that she passed along a rumor that the Sheriff was going to fire a higher-up and some female personnel.  (Def. Ex. 1 at pgs. 42-43).  Even though she claims to have used "a higher up" when passing along the rumor, she knew the rumor was that the Chief Deputy Miguel Larsen was going to be fired.  (*Id.* at pgs. 47-48).  That is the "speech" Plaintiff alleges gave rise to her discharge, and it took place in the dispatch office at the Sheriff's office, with only one co-worker present.  (*Id.* at pgs. 43-44).  Plaintiff admits that other than the one statement she made to Susan Yokel at the Sheriff's Department on the date of discharge (January 15, 2004), there are no other statements giving rise to her discharge.  (*Id.* at pg. 54, lines 9-15).

Plaintiff admits that during this conversation she never told Lt. Yokel that she was supporting Mr. Miller over Defendant.  (*Id.* at pg. 45, lines 18-21).  Nor was there anything from that conversation that would lead Lt. Yokel to think she was supporting anyone other than Defendant. (*Id.* at pgs. 45-46).

Plaintiff even told Sgt. Chamness that Defendant was going to fire Chief Larsen and replace him with a retiring DPS officer.  (Def. Ex. 6 at ¶ 7).  In fact, she said that on several occasions. Those conversations all took place at the Sheriff's Department, during working hours. (*Id.*).  Because of the fact she had said it so many times and her sister-in-law worked in the courthouse, Sgt. Chamness was lead to believe there was something to the rumor.  (*Id.*).  During this time period, Sgt.

Chamness noticed a change in the office atmosphere and the office morale was affected. (*Id.*). Sgt. Chamness thought that Plaintiff was trying to turn the Chief against Defendant.  (*Id.*).

Defendant never threatened employees with discharge if they did not vote for him in the election, or did not support him in the election.  (Def. Ex. 3 at ¶ 8)(Def. Ex. 4 at ¶ 6)(Def. Ex. 5 at ¶ 8)(Def. Ex. 6 at ¶ 9).  In fact, at one meeting of his supervisors, while he indicated he would like their vote, he stated that he was not naive enough to believe that all employees would vote for him. (Def. Ex. 3 at ¶ 8)(Def. Ex. 4 at ¶ 6).  Defendant indicated to the supervisors that the most important thing was for people to get out and vote, regardless of who they supported.  (Def. Ex. 3 at ¶ 8)(Def. Ex. 4 at ¶ 6)(Def. Ex. 5 at ¶ 8)(Def. Ex. 6 at ¶ 4).

Plaintiff's co-employees thought that she was supporting Defendant or remaining neutral. She did not indicate to any of those people that she was supporting Mr. Miller. (Def. Ex. 3 at ¶ 9)(Def. Ex. 4 at ¶ 7)(Def. Ex. 5 at ¶ 7)(Def. Ex. 6 at ¶ 4).  Defendant thought Plaintiff was supporting him. (Def. Ex. 3 at ¶ 9).

Defendant was worried about an employee who might be sabotaging his office and its operation.  (Def. Ex. 2 at pg. 33, lines 21-24)(Def. Ex. 3 at ¶ 10).  Defendant believed that if Chief Deputy Larsen thought he was going to be fired and quit, it would have hurt the operation of the Sheriff's Department.  (Def. Ex. 2 at pg. 34, lines 13-16)(Def. Ex. 3 at ¶ 10).  The rumors about firing employees hurt the morale in the Sheriff's Department.  (Def. Ex. 2 at pg. 34, lines 21-24)(Def. Ex. 3 at ¶ 10)(Def. Ex. 5 at ¶ 9)(Def. Ex. 6 at ¶ 8).  Plaintiff even admits that after hearing the rumor, Chief Larsen indicated to her he was concerned for his job.  (Def. Ex. 1 at pg. 75, lines 20-25).  That incident was almost a year and a half ago, and he is still the Chief Deputy.  (Def. Ex. 4 at ¶ 5).

Titus County has a policy on political activity which provides that employees of Titus County

shall have the right to support candidates of their choice and to engage in political activity during their personal time. (Def. Ex. 3 at ¶ 11)(Def. Ex. 4 at ¶ 8)(Def. Ex. 5 at ¶ 10)(Def. Ex. 6 at ¶ 10)(Def. Ex. 7).  Defendant has adopted the policies of Titus County for the Sheriff's Department.  (Def. Ex. 3 at ¶ 11)(Def. Ex. 4 at ¶ 8)(Def. Ex. 5 at ¶ 10)(Def. Ex. 6 at ¶ 10).

## V.

### PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE

Plaintiff presents evidence demonstrating the following.[3]  Plaintiff was the chief dispatcher for Titus County Sheriff's Department.  She was hired in November of 2000 as a dispatcher and was promoted to communications supervisor, her position at the time of her termination by Defendant. (Pl. Ex. A at pg. 31, lines 5-25). Plaintiff had not been reprimanded in her job, and any job performance issues Defendant had with Plaintiff were never put down in writing.  (Pl. Ex. B at pg. 6, lines 2-4 & pg. 7, lines 3-7).

In 2004, there was a hotly contested race for sheriff in Titus County.  (*Id.* at pg. 10, lines 1-3).  Defendant was running as the incumbent against Chris Miller, a childhood friend of Plaintiff's husband and whom Plaintiff and her husband had a longstanding relationship.  (Pl. Ex. A at pg. 53, lines 6-16). Defendant knew of the friendship and assumed that Plaintiff's husband would probably be supporting Miller as a candidate for sheriff (Pl. Ex. B at pg. 11, lines 4-24).

On January 14, 2004, Plaintiff was terminated after Defendant heard that she made a comment about the possibility of Defendant terminating Chief Deputy Miguel Larsen and other female members of the department if Defendant was reelected.  Plaintiff made the comment that

---

[3] Plaintiff presents the following summary judgment evidence in response to Defendant's motion: (1) Exhibit A - Excerpts of Plaintiff's Deposition; and (2) Exhibit B - Excerpts of Defendant's Deposition.

Defendant was supposedly going to fire a "higher-up" and "some female personnel" based upon a rumor she had heard from her husband in the context of what might happen if Defendant was reelected.  (Pl. Ex. A at pg. 42, line 18- pg. 43, line 2).  Defendant had no intention before the incident on January 15, 2004 of terminating Plaintiff's employment.  (Pl. Ex. B at pg. 13, lines 17-21).

Defendant acknowledges that the topic of the Sheriff's election in Titus County in January of 2004 was a matter of public concern.  (*Id.* at pg. 10, line 23- pg. 11, line 3).  After Defendant heard what Plaintiff had said to her coworkers, he immediately had a meeting with her in which she was terminated.  Defendant admits that the comment was the reason for Plaintiff's immediate termination.  (*Id.* at pg. 19, lines 1-16).  Defendant admits that Plaintiff was a non-policymaking employee of his department, and Plaintiff was not a confidante of Defendant in the discharge of his duties as Sheriff.  (*Id.* at pg. 8, line 19 - pg. 9, line 3).  Defendant also admits that his employees' first amendment free speech rights were clearly established and well known to him at the time of Plaintiff's termination.  (*Id.* at pg. 9, lines 4-19).

## VI.

## APPLICABLE LAW

There are four elements of an employee's First Amendment retaliation claim: (1) an adverse employment action; (2) speech involving a matter of public concern; (3) the employee's interest in speaking outweighs the employer's interest in promoting efficiency; and (4) the speech must have precipitated the adverse employment action.  *See Board of County Commissioners v. Umbehr*, 518 U.S. 668, 675 (1996); *Teague v. City of Flower Mound, Texas*, 179 F.3d 377, 380 (5th Cir. 1999).  It is undisputed there was an adverse employment action, thus the dispute here first centers on the

second element – whether Plaintiff's speech involved a matter of public concern.  This determination is a question of law.  *Teague*, 179 F.3d at 380.

The Fifth Circuit has "used two tests, sometimes in conjunction with one another, to determine whether speech relates to a public concern; both tests derive from language in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)."  *Kennedy v. Tangipahoa Parish Library Board of Control*, 224 F.3d 359, 366 (5th Cir. 2000).[4]  The first test is the content-form-context test: "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole court record."  *Id.*  Of the three factors, the Fifth Circuit elevates the role of context and form over content.  *Gillum v. City of Kerrville*, 3 F/3d 117, 121 (5th Cir. 1993).  "[The] focus [is] on the hat worn by the employee when speaking rather than upon the 'importance' of the issue." *Id.*  "The three-factor test has been summarized, at times, as a test to determine whether one is speaking as a citizen or as an employee."  *Teague*, 179 F.3d at 382.

The second, "shorthand" test sometimes utilized by the Fifth Circuit is the citizen-employee test: "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters *only* of personal interest," the employee's speech falls outside the parameters of speech involving matters of public concern.  *Kennedy*, 224 F.3d at 366.  Because

---

[4] In *Connick v. Myers*, 461 U.S. 138, 147  (1983), the Supreme Court held "that when a public employee speaks not *as a citizen* upon matters of public concern, but instead *as an employee* upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Id.* (Emphasis added).  The Court further stated the issue of whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement.  *Id.* at 147-48.

courts have sometimes considered the tests in conjunction with each other, *see Teague*, 179 F.3d at 382, and because "the citizen-employee test can yield indeterminate results," the Court in this case will consider the content, context, and form of Plaintiff's speech and will determine whether Plaintiff's speech is public or private based on these factors.  *Id.*

In *Terrell v. Univ. of Texas System Police*, 792 F.2d 1360 (5th Cir. 1986), the court stated "the mere fact that the topic of the employee's speech was one in which the public might or would have a great interest is of a little moment." Rather, the task of the court is to decide whether the speech at issue was made primarily in the employee's role as a citizen or in the employee's role as an employee.   Concluding that the employee's "speech," which consisted of scrutinizing his supervisor's job performance in a spiral-bound notebook, was not a matter of public concern, the Fifth Circuit relied on the employee's lack of effort to communicate the contents of the notebook to the public. *Id.* at 1361-63.

If a plaintiff meets her burden of establishing, as a threshold matter, that her speech was a matter of public concern, the employer then must establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity.  *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995).  The Fifth Circuit has recognized that "a stronger showing of disruption may be necessary if the employee's speech more substantially involves matters of public concern."  *Id.*  The Court has also noted that in "cases involving public employees who occupy policymaker or confidential positions . . . the government's interests more easily outweigh the employee's (as a private citizen.)" *Id.*

The Fifth Circuit has read the Supreme Court precedent applying *Pickering v. Board of Ed. of Tp. High School Dist.*, 391 U.S. 563 (1968) to indicate that a number of factors are relevant in

balancing the interests of the individual against those of the state, including the following: (1) the degree to which the employee's activities involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect on the employee's activity on those relationships; (4) whether the employee's activity may be considered hostile, abusive, or insubordinate; and (5) whether the activities impair discipline by superiors or harmony among coworkers. *See Brady v. Fort Bend County*, 145 F.3d 691, 707-08 (5th Cir. 1998). Put another way, the inquiry "involves whether the speech: (1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation; and (3) affected working relationships necessary to the department's proper functioning." *Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir. 1988).

## VII.

## DISCUSSION

### A.    Defendant's Assertions

The issues presented by Defendant's motion for summary judgment are: (1) whether Plaintiff fails as a matter of law to establish a case of First Amendment retaliation because she fails to establish that her alleged speech was a matter of public concern based on its context, content, and form; (2) whether Plaintiff fails as a matter of law to establish a case of First Amendment retaliation because Defendant's interest in management of his department outweighed Plaintiff's interest in spreading the rumor that Defendant was going to fire Chief Larsen and others higher up; and (3) whether Defendant is entitled to qualified immunity as a matter of law.

**B.      Whether Plaintiff's speech was a matter of public concern**

The issue of whether Plaintiff's speech was a matter of public concern is a question of law. *Teague*, 179 F.3d at 380.  Defendant asserts Plaintiff fails as a matter of law to establish that her speech was a matter of public concern. Conversely, Plaintiff boldly contends Defendant admitted in his deposition that her speech was a matter of public concern.  The Court reviewed the evidence submitted by Plaintiff, and it actually reflects that  Defendant admitted the Sheriff's election was a matter of public concern; he did not admit that any comment made by Plaintiff was a matter of public concern or that he had any knowledge Plaintiff's comment had anything to do with the election.

Plaintiff next asserts her comment was a matter of public concern because part of her statement included the possibility that Defendant would terminate some female members of the department in addition to the "higher up." According to Plaintiff, she was communicating concern about the possibility that Defendant may have been singling out females in the department for termination. Plaintiff argues this comment can be analogized to the comments made regarding potential racial discrimination which were held to be of a public concern in *Victor v. McElveen,* 150 F.3d 451 (5th Cir. 1998).

The Court finds the facts in *Victor* distinguishable from the facts involved in this case.  First, the content of Victor's speech was "fairly characterized as criticizing the sheriff for holding a meeting that only African-American deputies were required to attend for the purpose of explaining and discussing the implementation of a federally funded program that would serve a community of predominantly black residents." *Id.* at 456.  The Fifth Circuit found the content of Victor's speech was inherently of public concern because it was a protest against racial discrimination.  *Id.*  As for the context and form of the speech, Victor's statement was made in the course of a meeting arranged

14

by the sheriff. The meeting was attended by a representative of the press.  The sheriff invited the deputies to ask questions and make comments about the program.  "The sheriff recognized Victor for this purpose.  Before making his remarks, Victor asked the sheriff for and was given reassurance that he could speak freely without 'any fear of any retribution of any kind.'" *Id.*  Based on these facts, the Fifth Circuit held Victor spoke as a citizen on a matter of public concern, not as an employee upon matters only of personal interest.  *Id.*

The facts of the case before the Court are very different.  The content of Plaintiff's expression cannot be "fairly considered as relating to [a] matter of political, social, or other concern to the community[.]" *Connick*, 461 U.S. at 146.  Plaintiff admits that she passed along a rumor that she heard from her husband that Defendant was going to fire a higher-up and some female personnel. Even though she claims to have used "a higher up" when passing along the rumor, she knew the rumor was that the Chief Deputy Miguel Larsen was going to be fired.  The comment concerned an employee matter in the workplace of Plaintiff's personal interest; as such, it does not relate to any political, social, or other concern of the community.[5]

As for the context and form of the speech, Plaintiff's statement took place in the dispatch office at the Sheriff's office with only one co-worker present. Plaintiff admits that other than the one statement she made to Susan Yokel at the Sheriff's Department on the date of discharge (January 15, 2004), there are no other statements giving rise to her discharge. The comment was more akin to a rumor.  It was not made in a public forum, but rather in the context of a private conversation.

---

[5] Even though her comment concerned a chief deputy who might be considered a public figure, "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149.

Plaintiff did not go to the newspapers or any public forum to address her "concerns" or spread the rumor. The undisputed facts establish that the speech she claims is protected consisted of one comment, made to a co-worker, while in the dispatch office at the Titus County Sheriff's Department. An evaluation on context, content, and form, especially emphasizing context and form, requires a finding that Plaintiff's alleged speech was not a matter of public concern and is not protected by the First Amendment.

While Plaintiff's termination after her making one comment may seem harsh, the Court will not interfere with Defendant's personnel decision; Plaintiff was not speaking as a citizen upon matters of public concern but as an employee upon matters only of personal interest. The Fifth Circuit has stated that "the courts will not interfere with personnel decisions when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Thompson v. City of Starkville*, 901 F.2d 456, 462 (5th Cir. 1990).

## C.   Assuming *arguendo* Plaintiff's speech was a matter of public concern

If Plaintiff had met her burden of establishing her speech was a matter of public concern, Defendant then must establish that his interest in promoting the efficiency of the services provided by his employees outweighs Plaintiff's interest in engaging in the protected activity. *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). The Fifth Circuit has a number of factors are relevant in balancing the interests of the individual against those of the state, including the following: (1) the degree to which the employee's activities involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect on the employee's activity on those relationships; (4) whether the employee's activity may be considered hostile, abusive, or

insubordinate; and (5) whether the activities impair discipline by superiors or harmony among coworkers. *See Brady v. Fort Bend County*, 145 F.3d 691, 707-08 (5th Cir. 1998).  Put another way, the inquiry "involves whether the speech: (1) was likely to generate controversy and disruption, (2) impeded the department's general performance and operation; and (3) affected working relationships necessary to the department's proper functioning." *Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir. 1988).

Plaintiff asserts her interest in speaking outweighed the Defendant's interest in promoting efficiency because Defendant has brought forth no proof that the efficiency of the department was compromised in any form or fashion by Plaintiff's comment.  Plaintiff asserts she was terminated within minutes of making the comment rather than the sheriff taking a less drastic measure to handle the situation.  Further, Plaintiff refers to evidence indicating she was a non-policymaking, non-confidential employee of Defendant and as such, was not in a position to cause a problem in the department. Plaintiff maintains Defendant  has established no evidence that the statement attributed to Plaintiff in any way compromised the efficiency of the department.

The evidence presented by Defendant demonstrates Defendant saw Plaintiff's comment as the spreading of malicious rumors. According to Defendant's affidavit, Defendant believed that talk of this kind disrupts an office.  This is further evidenced by the fact that an employee had come to him worried about Plaintiff's comments.  Sgt. Chamness was concerned because the comments were disruptive to the office and were hurting morale. He wanted Defendant to reassure Chief Larsen he was doing a good job and was not going to be fired.

According to the uncontroverted evidence, Plaintiff even told Sgt. Chamness that Defendant was going to fire Chief Larsen and replace him with a retiring DPS officer. She said that on several

occasions. Those conversations all took place at the Sheriff's Department during working hours. The

fact she had said it so many times and her sister-in-law works in the courthouse, Sgt. Chamness was

lead to believe there was something to the rumor. During this time period, Sgt. Chamness noticed

a change in the office atmosphere and the office; morale was affected. Sgt. Chamness thought that

Plaintiff was trying to turn the Chief against Defendant.

Defendant was worried about an employee that was sabotaging his office and the whole

operation. Defendant believed that if Chief Deputy Larsen thought he was going to be fired and quit,

it would have hurt the operation of the Sheriff's Department. The rumors about firing employees hurt

the morale in the Sheriff's Department. Plaintiff admits that after hearing the rumor, Chief Larsen

indicated to her he was concerned for his job. After hearing the rumor, Chief Larsen was initially

concerned about his job security. That incident was almost a year and a half ago, and he is still the

Chief Deputy.

After considering the evidence submitted, the Court finds Defendant has established that his

interest in efficiently managing his office outweighed Plaintiff's interest in speaking.  Therefore,

even assuming Plaintiff had established her comment was a matter of public concern, Plaintiff's

claim still must be dismissed.[6]  Based on the foregoing, it is

**ORDERED** that Defendant Sheriff Arvel Shepard's Motion for Summary Judgment (Dkt.

No. 24) is **GRANTED**.  It is further

**ORDERED** that Plaintiff's above-entitled and numbered cause of action is **DISMISSED**

**WITH PREJUDICE**.  It is further

---

[6] The Court is not undertaking an analysis of the qualified immunity issue.  Even if it
applies, qualified immunity would only dispose of Plaintiff's claims against Defendant in his
individual capacity.

18

**ORDERED** that each party shall bear its own costs.

**SIGNED this 29th day of July, 2005.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE